No. 145. Becker et al. v. Philco Corp. C. A. 4th Cir. Certiorari denied. *Robert Sheriffs Moss* for petitioners. *Laidler B. Mackall* and *Karl E. Wolf* for respondent.

Mr. Chief Justice Warren, dissenting.

This is an important case affecting the rights of millions of workers to vindicate their reputations and to make a living in the military-private industrial complex. See *Greene* v. *McElroy,* 360 U. S. 474, 507, n. 31 (1959).

According to petitioners, this case presents the following question:

> "Is a government contractor endowed with the attributes of a Federal Agency and is it and are its employees clothed with unqualified or absolute privilege to falsely and maliciously defame other employees in reporting a loss, compromise, or suspected compromise of classified information, solely by reason of (1) having contracted with the United States Government to furnish it with supplies or services which are required and necessary to the National Defense, and (2) in connection therewith having entered into a security agreement with the United States Government under the terms of which it has agreed to report the *loss, compromise, or suspected compromise* of classified information." Petition for Cert., p. 2.

Petitioners brought this action against respondent Philco Corporation, their employer, for an alleged defamation made in a report to the Department of Defense under the terms of a contract for the manufacture of defense items. The complaint alleged that the report contained both false and malicious statements concerning petitioners and resulted in the withdrawal of their security clearances and thus the loss of their jobs. On re-

spondent's motion for summary judgment, the District Court dismissed the complaint, holding the communication absolutely privileged. 234 F. Supp. 10 (D. C. E. D. Va. 1964). Placing unjustified reliance on the authority of the principal opinion in *Barr* v. *Matteo,* 360 U. S. 564 (1959), the Court of Appeals for the Fourth Circuit affirmed. 372 F. 2d 771 (1967). In granting an absolute privilege to government employees at the expense of the individual's right to be free from defamation, *Barr* v. *Matteo* extended the earlier decisions of this Court to what I and others considered to be the breaking point. That opinion did not command a majority of this Court then, and only one of those who joined it is on this Court today. The conclusion there was reached by balancing

> "on the one hand, the protection of the individual citizen against pecuniary damage caused by oppressive or malicious action on the part of officials of the Federal Government; and on the other, the protection of the public interest by shielding responsible governmental officers against the harassment and inevitable hazards of vindictive or ill-founded damages suits brought on account of action taken in the exercise of their official responsibilities." *Barr* v. *Matteo, supra,* at 565.

The deprivation of the employees' rights in the present case is justified in the following manner: By Executive Order, the Secretary of Defense is empowered through regulations to safeguard classified information.[1] Pursuant to that power, the Secretary has issued an Industrial Security Manual which requires contractors to protect all classified information by maintaining a system of

---

[1] Exec. Order No. 10865, 3 CFR 1959–1963 Comp., p. 398, as amended by Exec. Order No. 10909, 3 CFR 1959–1963 Comp., p. 437.

security controls and to report any loss, compromise, or suspected compromise of that information to the Department of Defense.[2] The Secretary enters into a Security Agreement with his contractors to implement the provisions of the Manual. The Secretary does not attempt to clothe the contractor with any immunity from a civil action for damages caused by defamatory reports.

From this scheme to protect classified information, the court below took the additional and unwarranted step of conferring an absolute privilege on the corporation:

> "So it was that the company and such of its employees as were confidants were answerable for keeping the nation's secrets, as fully as if they were

[2] The Department of Defense Industrial Security Manual for Safeguarding Classified Information (Sept. 21, 1956, rev. Dec. 31, 1962) provides in part:

"6. Reports

"The contractor shall submit immediately to the cognizant security officer—

.    .    .    .    .

"*b*. A report, classified if appropriate, of any loss, compromise or suspected compromise of classified information.

.    .    .    .    .

"14.1. Loss, Compromise or Suspected Compromise of Classified Information

.    .    .    .    .

"*d*. In the event of loss, compromise, or suspected compromise of classified information outside of a facility the contractor shall establish procedures requiring that the person discovering the loss, compromise or suspected compromise shall immediately—

"(1) Notify the local office of the Federal Bureau of Investigation and furnish sufficient information to assist in identification of the information (if the loss, compromise or suspected compromise occurs outside the United States, the nearest United States authorities shall be notified in lieu of the Federal Bureau of Investigation); and

"(2) Report the loss to the contractor by the fastest means of communication.

"*e*. The military department assigned security cognizance shall conduct such further inquiry as may be required."

governed by the oath of a Federal official. Closely performing his duties and charged with equal responsibility and loyalty, we think the company and its trusted personnel were imbued with the official's character, and partake of his immunity to liability, whenever and wherever he would enjoy the absolute privilege." 372 F. 2d 771, 774.

No authority is quoted for this statement for the obvious reason that there is none.

I do not cast any doubt on the general powers of the Secretary of Defense in safeguarding classified information, nor on the Executive Order, nor on the Industrial Security Manual, nor on the Security Agreement entered into in this case. None of these are pertinent to our decision. Nor is the truth or falsity of the allegation that Philco maliciously or falsely defamed the petitioners of any relevance.[3] All the case involves is whether a private corporation under a Security Agreement with the Government is entitled to an absolute privilege to report with "actual malice" information to the Government that results in the deprivation of the workers' employment and reputation.

We have not granted to private citizens a blanket immunity from legal liability for defaming public officials. Instead, we have held that a public official may recover for defamatory falsehoods relating to his official conduct if he can prove the statement was made with "actual malice." *New York Times Co.* v. *Sullivan,* 376 U. S. 254 (1964). I can see absolutely no justification for granting to a corporation contracting with the Government a greater privilege to defame than we have accorded to private citizens in commenting upon the

---

[3] However, since this matter arises on motion for summary judgment, we are required to take the allegations of the complaint as true.

conduct of public officials. This seems to me to be a complete inversion of First Amendment rights. A qualified privilege is clearly sufficient in both situations to protect the paramount public interest in the free flow of information.

I disagreed with *Barr* v. *Matteo,* but even in that case it was said there were "other sanctions than civil tort suits available to deter the executive official" from making defamatory statements in press releases. 360 U. S. 564, 576. None of those "other sanctions" are present in the instant case. While a defamatory press release might subject the government official to both public censure and internal discipline from his superiors, the secrecy surrounding Philco's communication insulates the defamer from such sanctions. Since the Department of Defense has no disciplinary power over the employees of a private corporation for defamatory statements, internal sanctions are unlikely. It will also be much more difficult for the Department of Defense to recognize a malicious and false libel prepared by a private concern doing business with the Government. It follows then that even assuming, *arguendo,* that internal reports made by a governmental employee to his superior should have an absolute privilege since the superior will be able to evaluate the accuracy of a statement concerning conditions within his own department, this does not justify extending the privilege to communications from private corporations. Thus, the privilege has been conferred in this case without the normal concomitants of such protection, leaving the employees' reputation highly vulnerable to injury by a corporate executive who has no direct responsibility to the public.

It is difficult for me to understand why the importance of this case is not apparent to the Court. Personally, I cannot countenance this indiscriminate extension of

*Barr* v. *Matteo*. I would grant certiorari and invite the Government to make known its opinion of what the national interest might be.

MR. JUSTICE DOUGLAS, dissenting.

I agree with THE CHIEF JUSTICE that this is an important case which warrants the attention of the Court. It puts into focus several important issues, among them an aspect of the modern corporation which has become vital in the Federal Government's procurement program. Professor Galbraith has referred to it in his recent book The New Industrial State:

> "Increasingly it will be recognized that the mature corporation, as it develops, becomes part of the larger administrative complex associated with the state. In time the line between the two will disappear. Men will look back in amusement at the pretense that once caused people to refer to General Dynamics and North American Aviation and A. T. & T. as *private* business.

> "Though this recognition will not be universally welcomed, it will be healthy. There is always a presumption in social matters in favor of reality as opposed to myth. The autonomy of the technostructure is, to repeat yet again, a functional necessity of the industrial system. But the goals this autonomy serves allow some range of choice. If the mature corporation is recognized to be part of the penumbra of the state, it will be more strongly in the service of social goals. It cannot plead its inherently private character or its subordination to the market as cover for the pursuit of different goals of particular interest to itself. The public agency has an unquestioned tendency to pursue goals that reflect its own interest and convenience and to adapt social objective thereto. But it cannot plead this as a superior right. There may well be danger in

this association of public and economic power. But it is less if it is recognized." *Id.*, at 393–394.

I think the time has come for us to explore this problem; and the setting of the present case shows how pressing the problem is.