**Eugene BLUM**

v.

**Wallace H. CAMPBELL et al.**

**Civ. No. 19322.**

United States District Court,
D. Maryland.

July 12, 1972.

Elsbeth Levy Bothe, Baltimore, Md., for plaintiff.

George Beall, U. S. Atty., and Francis S. Brocato, Asst. U. S. Atty., Baltimore, Md., for defendants Ratcliffe, The Maryland Management Co., Clapp, Davis and Borcherding.

Donald E. Sharpe and Piper & Marbury, Baltimore, Md., for defendant Wallace H. Campbell.

## MEMORANDUM AND ORDER

HARVEY, District Judge.

Efforts undertaken by the Federal Housing Administration (the FHA) in 1966 to evict a tenant of Sutton Place Apartments have resulted in this civil action for libel and slander brought against various FHA employees and others. At the time of the matters in suit, Eugene Blum, plaintiff herein, was the tenant in question at Sutton Place Apartments, 1111 Park Avenue, Baltimore, Maryland. In this action, he seeks compensatory and punitive damages from the following six defendants:

1. Charles H. Borcherding, Sr., who was Director of the FHA insuring office in Baltimore, Maryland until December 31, 1966;

2. Allen T. Clapp, who became Director of such office on February 27, 1967;

3. H. Leroy Davis, who was Realty Officer for such FHA office in Baltimore during the time of the matters in suit;

4. The Maryland Management Company, which had contracted with FHA to manage Sutton Place Apartments commencing on October 1, 1966;

5. Phillip E. Ratcliffe, who was Vice President of The Maryland Management Company until June of 1967 when he became the Company's President; and

6. Wallace H. Campbell, who was appointed Receiver for Sutton Place Apartments by this Court on April 22, 1966 and who managed and operated the property as Receiver until discharged by Order of this Court on September 30, 1966.

This action was instituted in the Baltimore City Court but was removed here under the provisions of 28 U.S.C. § 1442(a)(1), which permits removal of any civil action commenced in a state court against an officer of the United States or any agency thereof for any act done by him under color of his office. Presently before the Court are motions for summary judgment filed by all the defendants, who claim that any statements made by them during the period in question were absolutely or qualifiedly privileged.

Plaintiff originally leased an apartment at Sutton Place in April 1963. When the owners of the apartment building defaulted in connection with payments due on their FHA mortgage, an action was instituted in this Court for foreclosure of the mortgage. United States v. Gilman, et al., Civil No. 17247.[1] Defendant Campbell was appointed Receiver by an Order entered by Judge Thomsen on April 22, 1966. On June 22, 1966, such Receiver filed with the Court his First Report, Account and Recommendations, which contained the following statement:

"10. There are approximately a dozen tenants that in our opinion harm the reputation of the building. Not only are they objectionable to other occupants, but have generally been slow in paying rent and consistent in violating covenants of the lease agreement. These residents should be removed from the property by any legal means available."

On August 8, 1966, the apartment building was sold to the FHA at public auction, ownership to become effective on September 30, 1966. Upon assuming ownership, defendant Borcherding decided to terminate the leases of plaintiff and several other tenants and ordered plaintiff to vacate by October 31, 1966. Plaintiff objected strenuously and thereupon called upon various public officials to intercede in his behalf to prevent his eviction. When plaintiff refused to vacate, ejectment proceedings were brought against him by the FHA in the People's Court of Baltimore City. In an opinion rendered on March 17, 1967, Judge Henry L. Rogers of that Court

1. The file in that case has been considered as a part of the record here.

ruled that the FHA had the legal right to repossess the apartment occupied by plaintiff, the Order to become effective July 1, 1967. Plaintiff thereupon took an appeal to the Baltimore City Court. After Judge Rogers had filed his opinion, the Supreme Court of the United States decided the case of Thorpe v. Housing Authority of City of Durham, 386 U.S. 670, 87 S.Ct. 1244, 18 L.Ed.2d 394 (1967). A Special Commissioner was appointed by the Baltimore City Court to take testimony and determine whether the FHA had complied with the principles of the *Thorpe* case in seeking to evict plaintiff. The Special Commissioner submitted his Report and Recommendation on August 29, 1967, finding that the FHA had acted unreasonably and recommending that judgment be entered in favor of Mr. Blum. The FHA then decided to conclude the litigation by entering into a new lease with Mr. Blum for his apartment at Sutton Place, and plaintiff has remained as a tenant until the present time.

In this action, plaintiff claims that the eviction proceedings were the subject of much public attention, that his reputation was greatly injured thereby, that he has been held up to hatred, ridicule and contempt, and that he has suffered extreme and prolonged mental anguish and great financial loss and damage. Plaintiff seeks $10,000 as compensatory damages and $200,000 as punitive damages.

## I

██ In support of their motion for summary judgment, defendants Borcherding, Clapp and Davis claim that at the time of the matters in suit they were public officials acting within the scope of their employment and that they are therefore immune from suit for damages allegedly resulting from statements made in the performance of their official duties. At the hearing on these motions, counsel for plaintiff conceded that under the principles of Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), this action cannot proceed against the defendants Borcherding, Clapp and Davis, all of whom are employees of the FHA. Quite clearly, the doctrine of absolute privilege applies not only to high officials of the United States but extends as well to officers of lower rank in the executive hierarchy. 360 U.S. at 573, 79 S.Ct. 1335. See also Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959). To the same effect are recent decisions in this Court and in the Fourth Circuit. Heine v. Raus, 261 F.Supp. 570 (D.Md. 1966), vacated and remanded 339 F.2d 785 (4th Cir. 1968); 305 F.Supp. 816 (D.Md.1969), affirmed 432 F.2d 1007 (4th Cir. 1970); Donnelly v. Johnson, Civil No. 21364 (D.Md. April 6, 1972).

## II

Plaintiff does not concede that his claims against defendants The Maryland Management Company and Phillip E. Ratcliffe are likewise barred by the doctrine of absolute privilege. Plaintiff contends that these two defendants were acting as independent contractors and not as agents of the federal government at the time that the alleged tortious acts were committed and that therefore they were not privileged to make and publish the statements which plaintiff claims to have harmed him.

In support of their motion for summary judgment, defendants Ratcliffe and Maryland Management Company contend that they were agents of the FHA and therefore enjoy the same privilege as government employees. In claiming that there is no genuine issue of fact before the Court, these defendants rely on various depositions and affidavits. Included in the present record are depositions of the defendants Clapp, Davis, Borcherding and Ratcliffe, taken on November 20, 1968. In addition, the defendants have filed affidavits of each of these four individual defendants, all dated in August, 1971. Attached to each of these affidavits are numerous exhibits which include correspondence, memoranda, reports and other documents, detailing the

activities of the various defendants during the period in question.[2]

■ From this extensive record, this Court finds from the undisputed facts that The Maryland Management Company and Ratcliffe during the period involved were acting as agents under the direct supervision and control of the FHA and not as independent contractors. As agents of the government acting within the scope of their contract, defendants Ratcliffe and Maryland Management Company are likewise immune from suit under the principles of Barr v. Matteo, *supra*. In particular, the provisions of the written agreement dated July 29, 1966 between the United States and The Maryland Management Company show quite clearly that the Company was being employed to manage Sutton Place Apartments under the direct and continuing supervision of the FHA. Article 5 of the agreement provides that the day-to-day administrative details of operation under the contract will be under the supervision of the Baltimore office of the FHA. Pursuant to Article 12, the Company agreed to abide by all instructions relating to the management, rental and maintenance of the project issued from time to time by the FHA. The various documentary exhibits show not only that the FHA had the power to direct and control the activities of the Company but in fact exercised close supervision of the Company's activities continually during the period involved in this action. What Ratcliffe and his Company did in seeking to evict the plaintiff was as much governmental action as if such acts had been undertaken by defendants Borcherding, Clapp and Davis themselves.

Furthermore, it is quite clear from the record here that the decision to terminate plaintiff's lease was made by Borcherding *before* the agreement with The Maryland Management Company became effective. Ratcliffe and other representatives of his Company thereafter did no more than carry out FHA instructions designed to accomplish this objective.

This Court's conclusion that these two defendants are likewise protected by an absolute privilege is supported by the opinion of the Fourth Circuit in Becker v. Philco, 372 F.2d 771 (4th Cir. 1967), cert. den. 389 U.S. 979, 88 S.Ct. 408, 19 L.Ed.2d 473 (1967). There, certain employees of a private contractor brought an action for libel against their employer because of a report made to the government which resulted in suspension of the plaintiffs' security clearance. Under the terms of the defense contract between the employer and the government, the employer was required to keep the government advised of suspected compromises of security. The Court held that communications made by the employer pursuant to the terms of such contract were absolutely privileged under Barr v. Matteo, *supra*, because the employer was acting as an agent of the United States government.

### III

Somewhat different considerations apply insofar as the defendant Campbell is concerned. Campbell's immunity, if any, arises not because he was an employee or agent of the FHA but because he was acting as an officer of this Court during all or a part of the time periods involved.

In response to a demand for particulars, plaintiff alleged the following defamatory statements uttered and published by the defendant Campbell:[3]

1. The statements contained in such defendant's Report dated June 21, 1966;[4]

2. No affidavits or depositions have been filed by plaintiff relating to this issue of agency.

3. Plaintiff's answers to such demand were not under oath.

4. The Report was filed in Court one day later.

2. The service on plaintiff by an employee of Campbell of a notice of eviction on September 28, 1966;

3. The statement by Campbell to "an inquirer from the Federal Housing Authority" on December 8, 1966 that everything he had previously said was true and that the government had good cause to evict the plaintiff;

4. Various statements made at various times between January and April, 1967 when eviction proceedings were pending in the People's Court of Baltimore City;

5. Statements by defendant Campbell during consultations and conferences with officials of the FHA and others between March 17, 1967 and August 29, 1967 with regard to the alleged grounds for the eviction of plaintiff; and

6. Testimony in "August, 1968" by the defendant Campbell before the Special Commissioner appointed by the Baltimore City Court.[5]

On December 2, 1969, defendant Campbell filed his first motion for summary judgment, claiming an absolute privilege as to all of these alleged statements. A hearing was held on May 8, 1970, and in an oral opinion, this Court denied the motion. On that occasion, this Court ruled that defendant Campbell did indeed have an absolute privilege with reference to statements made and published during the time that he was acting as a Receiver pursuant to Order of this Court. However, with reference to statements made after the receivership was concluded, this Court concluded that defendant Campbell could claim no more than a qualified privilege. Since plaintiff had alleged that the defamatory statements were maliciously made, and since defendant Campbell had not supported his first motion for summary judgment with affidavits, depositions or other appropriate pleadings to show that no issue of fact existed with reference to plaintiff's allegations of malice, the Court concluded that summa-

ry judgment could not then be granted insofar as the issue of qualified privilege was concerned.

Thereafter, the other defendants filed depositions, affidavits and extensive exhibits in support of their motion for summary judgment. On December 10, 1971, a hearing was held on the motion for summary judgment filed by the other five defendants. Counsel for defendant Campbell was present and requested the right to file a second motion for summary judgment based on the extensive factual material that had then been submitted to the Court. Leave was granted to file such motion, and both the plaintiff and the defendant Campbell were instructed to file further affidavits and counter-affidavits in support of and in opposition to this renewed motion for summary judgment so that the Court could rule on all of the pending motions at the same time.

In a letter to the Court dated February 1, 1972, counsel for the plaintiff requested additional time for submitting affidavits in opposition to defendant Campbell's motion for summary judgment. Such letter was to the following effect:

"At the December 10, 1971 hearing on the Motion for Summary Judgment made by Defendants Ratcliffe, Borcherding, Clapp and Davis, I advised the Court that the Plaintiff would submit counter-affidavits showing that the Defendants, particularly the non-government employees, Ratcliffe and Campbell, had committed acts outside of their governmental assignments which were not protected by the absolute privilege Plaintiff concedes would otherwise apply.

"I apologize for not having submitted this material and ask the Court's indulgence for additional time. I have discussed the doctrine of governmental immunity at great length with my client who, understandably, finds it difficult to accept that most of the

5. Presumably plaintiff intended "August, 1967," which was the month the Special

Commissioner rendered his Report and Recommendations.

Defendants are in many respects immunized regardless of the wrongs they may have committed against him or the evidence that supports his contentions. I have explained to him the nature of the evidence we must have available if his action is to proceed to trial. He assures me that he will be able to locate witnesses who can attest to activities of some of the Defendants which, in my opinion, would forestall granting of a Motion for Summary Judgment as to them.

"Mr. Blum is somewhat handicapped in locating witnesses because of the lengthy period (six years) this case has been in litigation. A substantial portion of the delay is due to the extraordinary time taken by the United States Attorney in filing Motions on behalf of his clients.

"This letter is then a status report and a request for more time. I have informed my client that time is growing short and I will submit such material as we have within the next couple of weeks."

On March 21, 1972, counsel for the plaintiff addressed another letter to the Court, which contained, *inter alia,* the following statements:

"In support of plaintiff's opposition to Motion for Summary Judgment made by defendants Ratcliffe, Borcherding, Clapp and Davis and now also in opposition to the motion filed March 9, 1972 on behalf of defendant Campbell, I am enclosing the deposition of one Frederick Harvey taken June 5, 1967 in which this witness testifies that defendant Campbell told him on the date Sutton Place was auctioned that "I will get him." (T. 6). Other than this deposition, we have not been able to secure affidavits to occasions where the defendants can be shown to have acted or spoken without reference to their duties as governmental agents or servants.

"I am not submitting a further memorandum in opposition to defendant Campbell's new motion for Summary Judgment as I do not quarrel with that defendant's contention that he had a qualified privilege to communicate with FHA personnel, and is absolutely privileged as to his testimony before Master Sachs. Our differences lie in the plaintiff's contention that the qualified privilege was vitiated by malice and bad faith which does not emanate from the court testimony. This contention was explored in plaintiff's prior memorandum and oral argument.

"As I mentioned to you in my letter of February 1, my client finds it understandably difficult to accept the doctrine of governmental immunity as developed from Barr v. Matteo which I have discussed and debated with him at great length. Because I feel that his case is extraordinarily persuasive on the facts and because he has so well articulated on his own behalf the arguments militating in favor of abandonment of the doctrine under those facts in his case, I am asking the Court's indulgence to consider the content of his letter to me of March 8, 1972 arguing his case."

■■ After reviewing all the papers submitted in support of and in opposition to defendant Campbell's motion for summary judgment, this Court concludes that such motion should be granted. From April 22, 1966 until midnight on September 30, 1966, any statements made by defendant Campbell relating to the attempted eviction of plaintiff are protected by an absolute privilege. An officer of the Court performing a judicial function is absolutely privileged to publish false and defamatory matter in the performance of his duties if the publication has some relation to the matter before him. Restatement of Torts, § 585; Brush-Moore Newspapers, Inc. v. Pollitt, 220 Md. 132, 137, 151 A.2d 530 (1959); Bartlett v. Christhilf, 69 Md. 219, 14 A. 518 (1888); Annotation, 42 A.L.R.2d 825, 830 (1955).

■■ After September 30, 1966, the defendant Campbell, in conferring with

representatives of the FHA, had a qualified privilege to make and publish the statements relied upon by plaintiff in this action. A qualified privilege exists when the occasion shows that the communicating party and the recipient have a mutual interest in the subject matter or some duty with respect thereto. Simon v. Robinson, 221 Md. 200, 206, 154 A.2d 911 (1959). To overcome a qualified privilege, a plaintiff must prove that the statements in question were made with actual malice. *Id.* at 206, 154 A.2d 911; Carr v. Watkins, 227 Md. 578, 585, 177 A.2d 841 (1962).

■ On the present record, this Court finds that there is no genuine issue as to the existence of malice on the part of the defendant Campbell in making the statements relied upon by plaintiff. In view of Campbell's affidavit, which stands unrebutted on this record, it is undisputed that his recommendations and actions were not motivated by any dislike for the plaintiff but in fact were made in good faith based on the information that Campbell discovered during the period of the receivership. As the record here shows that the statements in question were not made maliciously, or that Campbell lacked reasonable grounds to believe they were true, defendant Campbell is protected by the qualified privilege attending his discussions and conversations with representatives of the FHA after September 30, 1966.

In opposing defendant Campbell's motion, plaintiff relies solely on the following:

1. An 11-page letter dated March 8, 1972 from plaintiff to his attorney, which has been forwarded to the Court; and

2. A so-called "deposition" of one Frederick Harvey, purportedly taken on June 5, 1967.[6]

■ Neither of these documents, whether considered separately or together, are sufficient to defeat defendant's motion. When a party has made and supported a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, it is incumbent on the adverse party, by affidavits, depositions or other appropriate pleadings to set forth specific facts showing that there is a genuine issue for trial. Rule 56(e). Mere allegations or denials in the pleadings are not enough. Plaintiff's rambling, discursive letter is not under oath and therefore cannot be considered by the Court under Rule 56. Furthermore, such letter is no more than an extended discussion of and disagreement with the decision of the Supreme Court in Barr v. Matteo, *supra.*

■ Nor does the so-called "deposition" create an issue of fact here.[7] Such "deposition" was taken in the law offices of plaintiff's attorney at 41 W. Preston Street, Baltimore, Maryland. The original of such "deposition" has not been produced or filed with the Clerk. Instead, a copy of this curious document, 10 pages in length, was mailed to the Court. Although signed by the stenographer (who was apparently not a notary public), such copy has not been executed by the deponent nor by the notary public who administered the oath. There is no indication that the reading and signing of such deposition was waived. Even more surprising, the notary public present on this occasion appears to have been the plaintiff, Eugene Blum, himself. Furthermore, no other attorney appeared except for plaintiff's counsel, in whose office the "deposition" was taken. In other words, on the face of the document submitted, it appears that the "deposition" of plaintiff's friend, Frederick Harvey, was taken on June 5, 1967 with Eugene Blum, the plaintiff, acting as the notary and

6. At the time of the so-called "deposition," Mr. Harvey was a tenant at Sutton Place Apartments and a friend of plaintiff's. He is not related to the undersigned judge.

7. Both the plaintiff's letter of March 8, 1972 and the "deposition" will be delivered to the Clerk to be placed in the file in this case.

swearing the witness and with the plaintiff's attorney being the only other person present besides the stenographer who transcribed the proceedings. Quite understandably, defendant Campbell objects strenuously to this Court's acceptance of this "deposition" as a part of the record in this case. In particular, it is argued that defendant Campbell was not represented at the "deposition," that the same subject matter as in this case was not then involved and that the same parties were not then involved. See Moore on Federal Practice, 2d Ed., Vol. 6, p. 2146. This Court concludes that the document in question cannot be accepted either as a deposition or as an affidavit properly receivable under Rule 56 in opposition to defendant Campbell's motion for summary judgment.

In any event, even if such "deposition" were to be considered by this Court on its merits, it would not alter the ruling herein. Plaintiff relies on the purported testimony of Frederick Harvey at pages 5 and 6 of the document in question. Harvey there stated that at the time of the public auction the defendant Campbell said to him, referring to the plaintiff, "I will get him." From the "deposition," it quite clearly appears that this statement was made while the defendant Campbell was acting as Receiver pursuant to an Order of this Court. As such, this statement, if made, is protected by the absolute privilege enjoyed by the defendant Campbell during the time that he was acting as such Receiver.

For the reasons stated, it is this 12th day of July, 1972, by the United States District Court for the District of Maryland,

Ordered:

1. That the motion for summary judgment filed by the defendants Clapp, Davis, Borcherding, Ratcliffe and The Maryland Management Company be and the same is hereby granted;

2. That the renewed motion for summary judgment filed by the defendant Campbell be and the same is hereby granted; and

3. That judgment shall be entered in favor of the defendants and each of them with costs.