Wallace SLOTTEN, Appellee,

v.

William HOFFMAN; Agribank, as successor in interest to the Farm Credit Bank of St. Louis, Appellants.

No. 92–3008.

United States Court of Appeals,
Eighth Circuit.

Submitted March 17, 1993.

Decided. July 15, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 20, 1993.

Mark G. Arnold, St. Louis, MO, argued (Harry B. Wilson, on brief), for appellants.

Steven S. Fluhr, Clayton, MO, argued, for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

McMILLIAN, Circuit Judge.

This is an interlocutory appeal from an order issued by the United States District Court for the Eastern District of Missouri, denying William Hoffman and Agribank FCB [1] (collectively appellants) summary judgment on the ground of official immunity from a two-count complaint filed by Wallace Slotten, appellee, claiming tortious interference with contract and defamation. For reversal, appellants argue the district court erred in holding they were not entitled to official immunity because (1) private entities are entitled to official immunity when they are under a mandatory duty to supply information to governmental entities, (2) government instrumentalities are entitled to official immunity, and (3) appellants exercised their

---

1. Agribank FCB is the successor in interest to the Farm Credit Bank of St. Louis. William Hoff-

man served as Vice–President of the Farm Credit Bank of St. Louis.

discretion in releasing the information about appellee. For the reasons discussed below, we reverse the order of the district court and remand the case for reconsideration consistent with this opinion.

Appellee worked for the Farm Credit Bank of St. Louis (Agribank FCB is the successor in interest to the Farm Credit Bank of St. Louis) until January 6, 1987, when he left to take a job at the Farm Credit System Capital Corporation (Capital Corporation). Farm Credit Bank and Agribank are federal instrumentalities according to 12 U.S.C. § 2011. Pursuant to 12 U.S.C. §§ 2011, 2013, Farm Credit Bank and Agribank are regulated by the Farm Credit Administration (FCA).

Agribank is a member of the Farm Credit System, a network of borrower-owned cooperatives created by Congress to lend money to farmers and their marketing and supply cooperatives. H.R.Rep. 99–425 (Dec. 6, 1985), reprinted in 1985 *U.S. Code Congressional & Administrative News*, 2587, 2591 (House Report). By law, Agribank is limited to making agricultural loans. *Id.* at 2593. As a result, Agribank experienced the same effects of the agricultural depression of the 1980's that farmers experienced. *Id.* Congress addressed the effects of the agricultural depression by enacting the 1985 Amendments to the Farm Credit Act (1985 amendments). The 1985 amendments created the Capital Corporation and authorized it to enter into contracts with Farm Credit System entities, under regulations issued by the FCA.

Pursuant to these regulations, Agribank and Capital Corporation entered into an Assistance Agreement on November 6, 1986. This agreement required Agribank to "operate under the oversight and supervision of the Capital Corporation." Agribank agreed to:

> grant to the Capital Corporation and its representatives and employees full and complete access to any books, records, papers, loan files, documents and personnel of the St. Louis FLB, which it may have in its possession or have access to and which the Capital Corporation or any of its rep-
> resentatives or employees may, in their sole discretion, identify or request.

The purpose of this agreement was to assure the viability of Agribank, to prevent the impairment of outstanding capital stock, and to enable Agribank to redeem its stock, continue selling its stock, and make loans to farmers.

In December 1986, just before appellee joined Capital Corporation, the FCA completed an "extremely critical" audit of Capital Corporation. At the time appellee was hired by Capital Corporation, his direct supervisor was Hugh Miller, Senior Vice–President for High Risk Assets. Miller was allegedly reluctant to hire appellee, but did so based on instructions from his supervisor and out of fear of losing his own job. The unfavorable reviews from the FCA led Capital Corporation to reorganize its administration. As part of the reorganization, Miller's supervisor, who supported hiring appellee, resigned and Miller undertook a review of appellee's qualifications.

As part of his review, Miller spoke to a number of persons on a confidential basis who had been employed with appellee and received "universally poor recommendations." Miller ultimately contacted Hoffman, Vice–President of Agribank and appellee's former supervisor, on January 15, 1987. Based on the Assistance Agreement between Agribank and Capital Corporation, Miller was technically Hoffman's superior. Hoffman responded to Miller's inquiries regarding appellee's employment history. Appellee asserts that Hoffman intentionally gave a dishonest and slanderous employment assessment of appellee to Miller—indicating that appellee was not trustworthy, suggesting appellee hired incompetent employees, and stating appellee was considered a high-risk employee while he was employed at Agribank.

Miller also conducted an investigation of appellee's performance at Capital Corporation. Miller found that in the short time appellee had been at Capital Corporation, he had been reprimanded, had been described as a " 'hardass' with everyone—rather than a diplomat," and had not "done anything to show he can do the job." Following Miller's

review of appellee, Miller decided there were better persons available for the position and appellee was dismissed after only one month with Capital Corporation. While the uniformly negative reviews of appellee's work had some influence on his decision, Miller stated the "overriding factor" in his decision to release appellee was Capital Corporation's need to reorganize.

Appellee filed suit on February 5, 1992, with the Circuit Court of the City of St. Louis, Missouri. Appellants removed the action to the United States District Court on March 4, 1992 for resolution of the federal questions presented. On March 5, 1992, appellants filed a motion for summary judgment and a motion to strike the prayer for punitive damages. In an order dated August 4, 1992, the district court denied the motion for summary judgment and granted the motion to strike punitive damages. Appellants filed a timely notice of appeal from the denial of summary judgment, claiming they were entitled to official immunity. This court has jurisdiction to review only the denial of summary judgment.

■ We review a grant or denial of summary judgment *de novo*. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the party moving for summary judgment is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Get Away Club, Inc. v. Coleman,* 969 F.2d 664, 666 (8th Cir.1992); *Ford v. Dowd,* 931 F.2d 1286, 1289 (8th Cir.1991).

■ The federal government and its agents often rely on private parties for information necessary to execute governmental functions. When private parties are under a mandatory duty to supply such information, they are entitled to the government's official immunity. *Becker v. Philco Corp.,* 372 F.2d 771, 773–74 (4th Cir.), *cert. denied,* 389 U.S. 979, 88 S.Ct. 408, 19 L.Ed.2d 473 (1967)

(Philco held immune from suits resulting from its reporting suspected security breaches to the government). The sole issue before this court is whether appellants are entitled to official immunity as private entities or as governmental instrumentalities, if at all.

The district court found appellants were not "government officials" for the purpose of official immunity. *Slotten v. Hoffman,* No. 4: 92CV0417–DJS slip op. at 3 (E.D.Mo. Aug. 4, 1992) (*Slotten*). The district court held that Agribank, as part of the National Farm Credit System, is a "federally chartered instrumentalit[y] of the United States" and not the equivalent of a federal agency. *Id.* As such, the district court found Agribank could not enjoy all the privileges afforded to the federal government itself. *Id.* In addition, the district court found appellants had not demonstrated that appellee's claims arose from appellants' discretionary conduct. *Id.* at 4.

■ Appellants argue they are entitled to official immunity as either private entities or federal instrumentalities. Appellants contend that private entities, which operate under a mandatory duty to disclose information necessary to execute governmental functions, are entitled to official immunity. In the alternative, appellants argue they are eligible for official immunity because they are an instrumentality of the United States. In *Federal Land Bank v. Priddy,* 295 U.S. 229, 231, 55 S.Ct. 705, 706, 79 L.Ed. 1408 (1935), the Supreme Court explained the Farm Credit entities:

> are instrumentalities of the federal government, engaged in the performance of an important governmental function.... As such, so far as they partake of the sovereign character of the United States, Congress has full power to determine the extent to which they may be subjected to suit and judicial process.

Appellants argue that although Congress has waived official immunity for the vast majority of claims by expressly authorizing Agribank to "sue and be sued," under the limited application of *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) (*Barr*), appellants are eligible for official immunity

and the "sue and be sued" clause is irrelevant.

In *Barr*, the Supreme Court discussed the principle that government officials should enjoy official immunity to tort liability arising from the conduct of their official duties, noting the basis for the privilege as follows:

> It has been thought important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government.

*Id.* at 571, 79 S.Ct. at 1339.

However, appellee contends the Supreme Court clarified the limited scope of official immunity in *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988) (*Westfall*), and argues that under *Westfall*, appellants are not entitled to official immunity. In *Westfall*, the Supreme Court held that "absolute immunity from state law tort actions should be available only when the conduct of federal officials is within the scope of their official duties and the conduct is discretionary in nature." *Id.* at 297–98, 108 S.Ct. at 584. The Court explained the limitation as follows:

> The central purpose of official immunity, promoting effective government, would not be furthered by shielding an official from state-law tort liability without regard to whether the alleged tortious conduct is discretionary in nature. When an official's conduct is not the product of independent judgment, the threat of liability cannot detrimentally inhibit that conduct. It is only when officials exercise decisionmaking discretion that potential liability may shackle "the fearless, vigorous, and effective administration of policies of government." *Barr v. Matteo*, supra [360 U.S.] at 571 [79 S.Ct. at 1339].

*Id.* 484 U.S. at 296–97, 108 S.Ct. at 583–84.

Appellee argues appellants have not satisfied the burden imposed on them by *Westfall* to show they were acting within their official duties, and that their conduct was discretionary in nature. Appellee contends appellants have failed to present any evidence of the relationship between Capital Corporation and appellants, to their official duties, and to the level of discretion that they exercised in regard to the decision to give information to Capital Corporation. Appellee argues appellants are not entitled to official immunity because the contract between Capital Corporation and appellants does not elevate appellants to federal officials. In addition, appellee argues Hoffman did not give information to a federal agency, but rather to a federal instrumentality. Further, appellee argues the information was not given pursuant to a specific contract, but rather pursuant to a general contract designed to assist in the operation of appellants' bank.

Appellee argues that under *Hanna v. Federal Land Bank Ass'n*, 903 F.2d 1159 (7th Cir.1990) (*Hanna*), appellants are not entitled to official immunity as federal instrumentalities. In *Hanna*, the Seventh Circuit held that federal instrumentalities chartered pursuant to the FCA are not considered federal agencies because it was the Congressional intent to make the Farm Credit System owned by farmers and not the federal government. *Id.* at 1162.

However, we find the facts in the present case to be much like those of *Bushman v. Seiler*, 755 F.2d 653 (8th Cir 1985) (*Bushman*), where this court granted official immunity to a consultant who was linked indirectly to the federal government. In *Bushman*, General American was acting as an agent to the federal government for the purpose of auditing the Medicare program. Seiler was a consultant hired by General American for the audit. Seiler submitted a report to General American criticizing Bushman's medical practices. Based on this report, Bushman filed a defamation action against Seiler. This court acknowledged that the consultant's link to the federal government was "indirect," but found the purposes of the *Barr* doctrine required application of official immunity. *Bushman* at 656. Under *Bushman*, we conclude that appellants are entitled to official immunity.

Our view is supported by *Becker v. Philco Corp.*, 372 F.2d at 773–74 (defense contractor granted official immunity for reporting suspected security breaches); *Gulati v. Zuckerman*, 723 F.Supp. 353, 358 (E.D.Pa.1989) (defense contractor granted official immunity); *Blum v. Campbell*, 355 F.Supp. 1220, 1224 (D.Md.1972) (apartment manager for the Federal Housing Authority granted official immunity). In the instant case, federal law required appellants to make disclosures to Capital Corporation under FCA regulations. Appellants and Capital Corporation entered into a contract pursuant to FCA rules and regulations. Under the contract, Agribank agreed to "operate under the oversight and supervision of the Capital Corporation." In addition, Agribank was to grant Capital Corporation "full and complete access" to its records. Based on this agreement, when Miller, a representative of Capital Corporation, requested information from Agribank, Agribank was required to provide whatever information Capital Corporation sought.

The information revealed by Hoffman was in furtherance of the obligations imposed on Agribank by the contract between Agribank and Capital Corporation, authorized by the FCA. It follows that both Agribank and Mr. Hoffman are eligible for official immunity based on their compliance with Capital Corporation's requests. Therefore, we reverse the district court's finding that appellants were ineligible for official immunity.

Regarding appellants' contention that federal instrumentalities are eligible for official immunity, this court's decision in *Adams v. Home Owners' Loan Corp.*, 107 F.2d 139 (8th Cir.1939) (*Adams*), is controlling. Like Agribank, the corporation in *Adams* was an instrumentality of the United States. *Id.* at 140. Like Agribank, the corporation had the authority to "sue and be sued." *Id.* This court acknowledged the cases holding that the "sue and be sued" clause authorized most tort actions against the corporation, but held those cases were not controlling in light of the public purposes that the corporation served:

> Where, however, the accusation is made by public officers in the course of their official duties, ... it is against public policy to allow an action for malicious prosecution to be maintained on account of such official acts.... It is contended that the same principle of public policy is applicable to the present suit and justifies the dismissal entered by the trial court. We are of the opinion that the contention is sound....

*Id.* The Supreme Court cited *Adams* with approval in its opinion in *Barr.* 360 U.S. at 572 n. 9, 79 S.Ct. at 1340 n. 9.

■ The district court found appellants were not entitled to official immunity because there was no proof that their conduct was discretionary. We disagree. As a matter of law, discussions about personnel matters involve discretion because there is no standard by which such discussions can be measured. *Strothman v. Gefreh*, 739 F.2d 515, 518–19 (10th Cir.1984) (*Strothman*). Although *Strothman* predates *Westfall*, the court applied exactly the same standards as the Supreme Court announced in *Westfall*. See *Jordan v. Hudson*, 690 F.Supp. 502, 507 (E.D.Va.1988), *withdrawn*, 879 F.Supp. 98 (4th Cir.1989). We conclude the district court erred in holding that a response to a demand for information regarding personnel matters involved no exercise of discretion.

Accordingly, the order of the district court is reversed and the case remanded for reconsideration consistent with this opinion.

BRIGHT, Senior Circuit Judge, dissenting.

I dissent because, in my opinion, this case extends official immunity too far.

The majority rests its decision on an analogy to *Bushman v. Seiler*, 755 F.2d 653 (8th Cir.1985). This reliance is misplaced. In *Bushman*, an insurance company, serving as a Medicare carrier, hired a consultant to investigate Medicare claims two podiatrists were regularly submitting for services provided at various nursing homes. *Id.* at 654. In a letter report to the insurance company, the consultant suggested the podiatrists' diagnoses of peripheral vascular disease, a foot ailment, were based on their patients' entitlement to Medicare coverage. *Id.* The podiatrists subsequently sued the consultant for libel and slander.

The special facts there supported official immunity. An express governmental agency relationship existed between the insurance company and the Department of Health and Human Services. The consultant's report was part of regular audits the insurance company was required to perform as a Medicare carrier. *Id.* at 655–56.

*Bushman* does not control this case for two fundamental reasons. First, the Farm Credit Bank (Agribank), by whom Hoffman was employed, is not an agency of the government, but a "farmer-owned and operated" federal instrumentality, *see Hanna v. Federal Land Bank Ass'n of Southern Illinois,* 903 F.2d 1159, 1162 (7th Cir.1990),[1] which Congress has expressly stated "shall have the power to ... sue and be sued." 12 U.S.C. § 2013(4).

Second, Hoffman's alleged statements to Miller were not part of either a report or other integral function Farm Credit Bank was expressly obligated to provide Capital Corporation or an alleged fraud perpetrated against the government. *Becker v. Philco Corp.,* 372 F.2d 771 (4th Cir.), *cert. denied,* 389 U.S. 979, 88 S.Ct. at 408 (1967), also cited by the majority, does not apply because Hoffman's comments did not arise out of a private individual's duty to report security breaches to the government. *Id.* at 773–74.

Rather, Hoffman's statements were elicited as simply part of a background check Miller conducted in which he contacted persons with and for whom Slotten had previously worked. That Hoffman was one of these persons contacted was purely coincidental, having very little to do with any obligation Agribank may have had pursuant to the Assistance Agreement.

Capital Corporation, as I understand the institution, is owned by the member banks and, among other things, provides a central source of financial assistance to individual Farm Credit System institutions and assists Farm Credit System institutions in restructuring, refinancing or guaranteeing loans of their member borrowers. The Capital Corporation is run by a five-member board; four elected from the Farm Credit District boards, the banks that own voting stock, and one member appointed by the chairman of the Farm Credit Administration. *See* H.R. 99–425 (Dec. 6, 1985), reprinted in 1985 *U.S.C.C.A.N.* 2587, 2588–89 (House Report).

Thus, Capital Corporation does not become an agency of the government, but a corporation owned by the member banks to assist them in their banking functions to service farmers. That Capital Corporation and Agribank are subject to audit and regulatory supervision by the Farm Credit Administration does not, in my opinion, convert these institutions into federal agencies, nor make their internal operating decisions governmental action so as to shield the decisionmakers with official immunity.

Although the majority suggests Hoffman's comments were provided in compliance with Agribank's duty to permit Capital Corporation "full and complete access to ... [its] personnel," the connection to the federal government is simply too attenuated, casting far too great a shield over Farm Credit Banks and abrogating the "sue and be sued" clause under which they operate.

I would not extend official immunity status to Hoffman because he was not a federal government employee as was the situation in *Barr v. Matteo,* 360 U.S. 564, 565, 79 S.Ct. 1335, 1336, 3 L.Ed.2d 1434 (1959). His statements in no way relate to or further the governmental nexus between Agribank and the Capital Corporation with the Farm Cred-

---

**1.** The Seventh Circuit said of other banks in the Farm Credit System:

> [P]roduction credit associations and federal land bank associations are not federal agencies. Even though Federal Land Bank Associations and Production Credit Associations are 'federally chartered instrumentalit[ies] of the United States,' created under the Farm Credit Act of 1971, they are not considered as federal agencies per se under 12 U.S.C. § 2001(a) that establishes the 'farmer-owned cooperative

> Farm Credit System,' and are owned and operated by farmers. Congress' intent was that the farm credit system was to be owned and operated by farmers rather than the federal government. Thus, both Federal Land Bank Associations and Production Credit Associations are farmer-owned and operated agencies rather than the federal instrumentalities.

> *Hanna v. Federal Land Bank Ass'n of Southern Illinois,* 903 F.2d 1159, 1162 (7th Cir.1990) (citations omitted).

it Administration. Agribank is not a federal agency. Neither Agribank nor its employees enjoy official immunity in the circumstances thus far presented in this case.

For these reasons, and on the basis of District Judge Donald J. Stohr's excellent analysis in his order[2] denying summary judgment, I would affirm that order.

---

2. Order filed August 4, 1992, *Slotten v. Hoffman, et al.*, No. 4:92CV0417–DJS (E.D.Mo.).