Jack D. GULATI and Fidelity Technologies Corporation

v.

Lawrence H. ZUCKERMAN; Viatek, Inc., a Pennsylvania Corporation; Gregory S. Baumann; Harry J. Diamond; and Barry D. Yeakel.

Civ. A. No. 89–4618.

United States District Court, E.D. Pennsylvania.

Oct. 25, 1989.

James B. Martin, Stevens & Johnson, Allentown, Pa., for plaintiffs.

Steven A. Bergstein, Frank, Frank, Penn & Bergstein, Allentown, Pa., for defendants.

354

## MEMORANDUM

CAHN, District Judge.

The plaintiffs in this defamation action are Jack Gulati, a citizen of Pennsylvania, and Fidelity Technologies Corporation (FTC), a Pennsylvania corporation of which Gulati is president. The defendants are Viatek, Inc., a Pennsylvania corporation; Lawrence H. Zuckerman, Viatek's president; Gregory S. Baumann and Harry J. Diamond, employees of Viatek; and Barry P. Yeakel, a former employee of Viatek. The individual defendants are all citizens of Pennsylvania.

This action was originally filed in the Court of Common Pleas of Lehigh County. The case was removed to federal court, by motion of the defendants, under 28 U.S.C. § 1442(a)(1), which permits removal of a suit brought against

> [a]ny officer of the United States or any agency thereof, or person acting under him, for any act under color of such office ...

The defendants have filed a motion to dismiss or, in the alternative, a motion for summary judgment, together with supporting affidavits. Since I will rely in part upon materials outside the pleadings in rendering my decision on the defendants' motion, I will treat the motion as one for summary judgment.

According to the allegations in the plaintiffs' complaint and to the unchallenged averments in the affidavits submitted by the defendants, the relevant facts of the case are as follows. Plaintiff Gulati was the president of Viatek, Inc., until November 9, 1987. The plaintiffs' defamation claim rests, in the main, upon two incidents which followed Gulati's termination as an employee of the defendant corporation.

In a letter dated May 26, 1988, defendant Zuckerman, the current President of Viatek, wrote to the Office of Regional Coun-

sel of the United States Small Business Administration requesting, under the Freedom of Information Act, copies of Gulati's applications to Small Business Administration assistance programs. In the letter, Zuckerman stated that the Board of Directors of Viatek "strongly suspected Mr. Gulati of having conducted his job in an unethical and corrupt manner—committing illegal acts, including perjury— ..." Complaint, Exhibit A. He also expressed suspicion that Gulati had violated his employment contract and nondisclosure agreement with Viatek. *Id.* Zuckerman's letter to the Small Business Administration forms the basis of the first count of the Complaint.

Counts Two through Five of the Complaint rest on statements made by the defendants to investigative agencies of the Department of Defense.[1] Viatek, a defense contractor, holds a facility security clearance, which qualifies it for access to certain classified information. As a cleared contractor, Viatek is subject to the requirements of the Defense Industrial Security Program (DISP). The company's compliance with security requirements is monitored by the Defense Investigative Services (DIS), which conducts security inspections of contractor personnel and facilities.

On December 4, 1987, in the course of a scheduled inspection of Viatek, the DIS learned that Gulati had been dismissed from his position. At the time of the inspection, there was some discussion of whether it would be appropriate for Viatek to file an "adverse information report," under paragraph 6(b)(1) of the Department of Defense's Industrial Security Manual for Safeguarding Classified Information, regarding Gulati. This paragraph directs contractors to submit reports "of any information coming to their attention concerning any of their employees who have been

---

1. Count Six of the complaint charges Viatek with liability for all of the aforementioned statements of *its* employees and for additional statements made by unidentified employees to Equifax Services, Inc., and to Mildred Zelenko, an employee of the Department of Defense. The circumstances surrounding these statements are not discernible from the information before this court. However, such information is not critical to the disposition of the defendants' motion.

Counts Seven through Ten of the complaint contain damage allegations and demands for punitive damages.

cleared or who are in the process of being cleared for access to classified information, which indicate that such access or determination may not be clearly consistent with the national interest." Department of Defense, Industrial Security Manual for Safeguarding Classified Information ¶ 6(b)(1) (1989).[2] This reporting requirement, which is not obviated by the discharge of an employee, is quite broad. Footnote 13 to paragraph 6(b)(1) states that:

> As a general rule, any information that reflects adversely on the integrity or character of the employee, which suggests that his or her ability to safeguard classified information may be impaired, should be reported to DISCO [Defense Industrial Security Clearance Office] ... The following are some examples of the types of information ... which should be reported to DISCO: criminal activities; bizarre or notoriously disgraceful conduct; treatment for mental or emotional disorders; excessive use of intoxicants; use of illegal, controlled substances ...; and excessive indebtedness or recurring financial difficulties. These examples are not all inclusive, but are intended only to serve as a sample of the types of information which should be reported. Only information which has been confirmed by the contractor as fact need be reported ... If there is doubt whether information should be reported, furnish the information to DISCO for evaluation.

Viatek indicated that it would decide whether to file such a report after completing an internal investigation of Gulati's suspected misconduct. On March 23, 1988,

the DIS learned that FTC, a corporation headed by Gulati, had applied for a facility security clearance. An agent of the DIS contacted defendant Zuckerman to ask whether he intended to submit the adverse information report. After discussion of the allegations against Gulati, it was determined that submission of the report would be appropriate. The report was filed at DISCO on March 31, 1988. The report, as summarized by the plaintiffs, accused Gulati of illegal and unethical business practices, violation of his employment contract and nondisclosure agreement, theft of Viatek trade secrets and Viatek property, misrepresentation of Viatek as a minority owned business, misrepresentation of his son as an engineer for the purpose of meeting government contract requirements and obtaining consulting fees, perjury, and other assorted misdeeds. Complaint at 5–7.

The following month, the Personnel Investigations Center (PIC) began an investigation of Gulati.[3] On June 1, 1988, the DIS industrial security field office chief and a DIS special agent visited Viatek and interviewed a number of Viatek personnel, including defendants Zuckerman, Baumann, Diamond, and Yeakel. The four defendants made statements similar to those which appear in the adverse information report.

The defendants press their motion for summary judgment on three grounds. First, they argue, a defense contractor is entitled to partake of federal official immunity when it cooperates with the government in a security investigation. Second,

**2.** The current Industrial Security Manual, which this court quotes here, is identical in pertinent part to the September, 1987, version of the Manual, which was in effect at the time of the incidents which form the basis of the Complaint. Portions of the September 1987 Manual are attached to the Defendants' Brief in Support of the Motion to Dismiss and/or Motion for Summary Judgment, at Exhibit B, and portions are referred to in the Declaration of Michael Leonard, Industrial Security Field Office Chief, Defense Investigative Services, at Exhibit A to the Defendants' Brief.

**3.** Paragraph 5aa of the Industrial Security Manual provides:

> The contractor shall cooperate fully with representatives of DIS or other federal investiga-

tive agencies during official investigations concerning their unauthorized disclosure of classified information or during the conduct of investigations related to determining the eligibility of past or present employees or other personnel requiring a security clearance. This includes, but is not limited to, providing suitable arrangements within the facility for conducting private interviews with employees during normal working hours, making employment and security records available for review on request by such representatives, and otherwise rendering assistance as necessary.

Exhibit B of Defendants' Brief.

they argue that they are entitled to immunity under state law. Third, they argue that the plaintiffs have failed to exhaust their administrative remedies.

■ Federal officials are absolutely immune from state-law tort liability for conduct which is discretionary in nature and which falls within the scope of their employment. *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988); *Owens v. United States*, 822 F.2d 408, 410 (3d Cir.1987); *Araujo v. Welch*, 742 F.2d 802 (3d Cir.1984). According to the Supreme Court:

> The purpose of such official immunity is not to protect an erring official, but to insulate the decisionmaking process from the harassment of prospective litigation. The provision of immunity rests on the view that the threat of liability will make federal officials unduly timid in carrying out their official duties, and that effective Government will be promoted if officials are freed of the costs of vexatious and often frivolous damages suits.

*Westfall*, 108 S.Ct. at 583. Official immunity from defamation suits is a time-honored form of the privilege. *See, e.g., Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Spalding v. Vilas*, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896); *Keiser v. Hartman*, 339 F.2d 597 (3d Cir.1964). This immunity is not defeated by a plaintiff's allegations of malice. As the Supreme Court has observed:

> The claim of an unworthy purpose does not destroy the privilege ... The privilege would be of little value if [federal officials] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of a pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives.

*Barr*, 360 U.S. at 575, 79 S.Ct. at 1341, (quoting *Tenney v. Brandhove*, 341 U.S. 367, 377, 71 S.Ct. 783, 788–89, 95 L.Ed. 1019 (1951)) (plurality opinion).

The defendants in this case are not federal officers. However, private persons are sometimes entitled to the same immunity which they would receive if they were federal officials. This court is aware that such immunity should be granted to private actors only under very special circumstances. As in any decision setting the limits of absolute official immunity, a court extending that immunity to the private sector must bear in mind its negative aspect. As the Supreme Court has stated:

> [O]fficial immunity comes at a great cost. An injured party with an otherwise meritorious tort claim is denied compensation simply because he had the misfortune to be injured by a federal official. Moreover, absolute immunity contravenes the basic tenet that individuals be held accountable for their wrongful conduct.

*Westfall*, 108 S.Ct. at 583. Thus, this court must heed the Supreme Court's admonition "to consider whether the contribution to effective Government in particular contexts outweighs the potential harm to individual citizens." *Id.* at 585.

Moreover, the potential harm of granting immunity is magnified when the immune party is a private person. As the Eleventh Circuit, holding that an export insurer was *not* entitled to official immunity based on its relationship with the United States export-import bank, has stated:

> The justifications for immunity will seldom be present ... when the defendant's connection with government is limited to a business relationship. Once shielded from tort liability, there is always the danger that a private enterprise will become too fearless, too vigorous and too effective.

*Nu–Air Mfg. Co. v. Frank B. Hall & Co.*, 822 F.2d 987, 995 (11th Cir.1987). Thus, "courts have only extended official immunity to the private sector on those rare occasions when the need is pressing." *Id.*

Despite these considerations, courts have granted official immunity to private actors in "defamation actions resulting from reports prepared by private industry for government agencies." *Id.* The decision most clearly on point is *Becker v. Philco Corp.*, 372 F.2d 771 (4th Cir.1967). In *Becker*, two individuals sued their former employer, a defense contractor, for submit-

ting an allegedly defamatory report to Department of Defense officials, under paragraph 6(b) of the contemporary version of the Department of Defense Industrial Security Manual, which required the contractor to submit a report "of any loss, compromise, or *suspected* compromise of classified information." *Id.* at 773 (emphasis in original).[4] The court held that the contractor making the report was entitled to official immunity. The court wrote:

> ... Indisputably, the Government by the contract bared and confided State secrets to [the defendant]. The company was imparted, and it worked in, knowledge exclusively the sovereign's. It was a sharing of confidence, quite aside from a subcontract for the production of defense supplies. So it was that the company and such of its employees as were confidants were answerable for keeping the nation's secrets, as fully as if they were governed by the oath of a Federal official. Closely performing his duties and charged with equal responsibility and loyalty, we think the company and its trusted personnel were imbued with the official's character, and partake of his immunity to liability, whenever and wherever he would enjoy the absolute privilege.

372 F.2d at 774.

The plaintiffs in this case argue that *Philco* is distinguishable because the government actually shared confidential information with the contractor, and the purportedly defamatory reports contained allegations that state secrets had been compromised. "The defamation here," say the plaintiffs, "... is of a much more generic type." Plaintiff's Response to the Motion to Dismiss, at 6. This distinction does not seem to me to be critical. The reporting obligation set forth in paragraph 6(b)(1) of the current industrial security manual extends far beyond actual or suspected leaks of classified material, to any information that might affect the government's assessment of an individual's trustworthiness. The defendants' statements did not go be-

yond the scope of the government's request.

A second case, *Bushman v. Seiler,* 755 F.2d 653, 655 (8th Cir.1985), also supports the grant of immunity. In that case, official immunity was granted to a private consultant employed by a Medicare insurance carrier who was sued for libel in connection with a letter he wrote to his employer about the plaintiff. The court, noting that the defendant "communicated the report because [the insurance company] was required to perform audits, and the report was for internal use," concluded:

> Applying immunity here is consistent with protecting "officials who are required to exercise their discretion," and promoting the "public interest in encouraging the vigorous exercise of official authority."

*Id.* at 656 (quoting *Butz v. Economou,* 438 U.S. 478, 506, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978)). *See also McManus v. McCarthy,* 586 F.Supp. 302, 305 (S.D.N.Y. 1984) (official immunity granted to Merchant Marine cadets for submitting report critical of captain); *Blum v. Campbell,* 355 F.Supp. 1220 (D.Md.1972) (building management company and its vice president entitled to official immunity from defamation action arising from their management of an FHA owned building). *Cf. Reuber v. United States,* 750 F.2d 1039, 1057 (D.C.Cir.1984) (private corporate defendants may be deemed federal actors in *Bivens* action "when they act in such a way as to create an integrated alliance with the government and their conduct therefore is imbued with the power and prestige of government officials"); *Texas ex rel. Falkner v. National Bank of Commerce,* 290 F.2d 229, 231 & n. 1 (5th Cir.1961) (national banks operating branches on federal military installations have a colorable claim that they are acting under the authority of the United States and are entitled to removal under 28 U.S.C. § 1442(a)(1)).

---

**4.** This paragraph appears to correspond with paragraph 6(a)(2) of the current Industrial Security Manual. *See* Defendant's Brief in Support of Motion to Dismiss and/or Motion for Summary Judgment, Exhibit B.

**358**

■ A grant of immunity is clearly justified in this case. The maintenance of the necessary level of security throughout our vast defense industry requires a high level of cooperation by defense contractors. Contractors have the duty to report all manner of potentially damaging information about their employees to the appropriate federal authorities. They must be able to do this free of the fear of expensive litigation. Self-censorship in adverse information reporting would be extremely detrimental to the federal goal of ferreting out security risks in the defense industry. It is the province of federal security investigators, not of reporting contractors, to sort out valid reports of employee misbehavior from unfounded fictions.

However, the defendants in this case are not entitled to a cloak of immunity for all purposes. Federal official immunity extends only to discretionary conduct which is within the scope of a defendant's official duties. *Westfall*, 108 S.Ct. at 585. This means, briefly, that the conduct at issue must, first, be "the product of independent judgment," *id.* at 584, and, second, "enhance the performance of official function by advancing some legitimate purpose of the office in question." *Owens v. United States*, 822 F.2d 408, 410 (3d Cir.1987). *See also Araujo*, 742 F.2d at 805. Private actors partaking of official immunity must meet an analogous standard. *See Bushman*, 755 F.2d at 655. All of the defendants' acts and statements in furtherance of the Department of Defense's investigation of Gulati fall easily within the scope of their "official" duties; cooperation in such investigations is an obligation of all cleared contractors and their employees. Moreover, these acts clearly involve the exercise of discretion. They thus are of the sort that "the threat of liability [can] detrimentally inhibit," *Westfall*, 108 S.Ct. at 584, and merit the protection of immunity. *See also Araujo*, 742 F.2d at 805; *Johnson v. Alldredge*, 488 F.2d 820, 824 (3d Cir.1984).

Thus, I find that the defendants are immune from state tort liability in connection with all statements made in reports to, and in conversations with, Department of Defense agents.

■ As the plaintiffs rightly point out, however, the defendants advance no arguments which would justify their insulation from liability for the letter which defendant Zuckerman wrote to the Small Business Administration.[5] Writing this letter was not part of the defendants' "official" duties as government contractors. The defendants make no allegation that this letter was written under federal direction or pursuant to any regulatory or contractual obligation. Protecting the writer of such a letter from tort liability would serve no important governmental purpose. Thus, the counts of the plaintiff's complaint which are based upon defendant Zuckerman's letter to the Small Business Administration survive the motion for summary judgment.[6]

■ The question thus becomes whether this court should retain jurisdiction over what remains of this dispute. Federal jurisdiction in this action was founded on 28 U.S.C. § 1442(a)(1). Removal under this section is proper where the defendant (1) is a federal officer or a person "acting under" a federal officer, and (2) raises a federal defense. *Mesa v. California*, — U.S. —, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989); *see also District of Columbia v. Landmark Servs., Inc.*, 411 F.Supp. 1002 (D.D.C.1976). Once the federal parties (or, in this case, the claims based upon actions taken pursuant to federal direction) are dismissed from a case which has been removed under § 1442(a)(1), a federal district court has the power either to adjudicate the remaining state claims or to remand to state court. 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3727, at 462 (1985 and Supp.1989); *District of Columbia v. Merit Systems Pro-*

---

**5.** The burden of proving that they are entitled to absolute immunity rests on the defendants. *Westfall*, 108 S.Ct. at 585.

**6.** In addition, the plaintiffs' action survives summary judgment insofar as it is predicated upon statements to Equifax Services, since those statements do not appear to relate to a Department of Defense investigation.

*tection Bd.,* 762 F.2d 129, 132–33 (D.C.Cir. 1985); *IMFC Professional Servs. of Florida, Inc. v. Latin Am. Home Health,* 676 F.2d 152, 160 (5th Cir.1982). *Cf. Boyer v. Regli,* 510 F.Supp. 1078, 1081 (E.D.Pa.1982) (removal under Federal Drivers Act).

■ It was appropriate in this case to permit the defendants to test their claim of official immunity in a federal forum. However, now that the immunity question has been resolved, there is little benefit to continuing the litigation here. In my view, a defamation suit, between private persons engaged in purely private conduct, does not, in the absence of diversity, belong in federal court. Moreover, since no proceedings in this court have addressed the merits of the plaintiff's remaining defamation claim, judicial economy will not be disserved by a remand. Thus, I will exercise my discretion to remand this case to state court. I need not address the defendants' arguments that this action is premature, or that they are entitled to state law immunity; they may press these arguments in state court.

In sum, the defendants' motion for summary judgment is granted with respect to all counts of the complaint which are predicated on statements made to Department of Defense officers or agencies or in connection with a Department of Defense investigation of either plaintiff. The motion is denied with respect to all other counts. The case will be remanded to the Court of Common Pleas of Lehigh County, Pennsylvania. An order follows.

### ORDER

AND NOW, this 25th day of October, 1989, in consideration of the defendants' motion to dismiss or, in the alternative, for summary judgment, and the plaintiffs' response thereto, it is hereby ORDERED AND DECREED:

1. Summary judgment for the defendant is GRANTED with respect to all counts of the complaint which are predicated on statements made to Department of Defense officers or agencies or in connection with a Department of Defense investigation of either plaintiff.

2. Summary judgment is DENIED with respect to all other counts of the complaint.

3. The case is remanded to the Court of Common Pleas of Lehigh County, Pennsylvania.

4. The clerk of the court is directed to transfer the file in this case to the clerk of the Court of Common Pleas of Lehigh County, Pennsylvania forthwith.