# CIRCUIT COURT OF ALBEMARLE COUNTY

Richard W. Smith

v.

Jan Rossini

June 10, 1999

Case No. (Law) CL98-7695

BY JUDGE PAUL M. PEATROSS, JR.

This matter comes before the court on the Defendant's Demurrer filed on April 9, 1999, and argued before the court on June 1, 1999.

Paragraph three of the Demurrer asserted the claim that the Plaintiff's Motion for Judgment for defamation filed on December 4, 1998, should be dismissed because the occasions of the allegedly defamatory statements set forth in the motion for judgment were absolutely privileged and the communication is not actionable as a matter of law.

### Facts Alleged in Motion for Judgment

Richard W. Smith is a student at the University of Virginia. Jan Rossini is a private individual residing in Memphis, Tennessee. From November 1997 through May 1998, Smith was the subject of an investigation by the University of Virginia Police Department and the Albemarle Commonwealth's Attorney's Office. The investigation focused on allegations that Smith was involved in an assault on another student.

The investigation was highly publicized both in Charlottesville and Smith's home city of Memphis, Tennessee. During the course of the investigation, Mrs. Rossini contacted the Commonwealth's Attorney, James L. Camblos, and allegedly made defamatory remarks to him concerning Smith. The remarks alleged were that Rossini asserted Smith is a "bad kid," "lunatic," and "maniac." Furthermore, Rossini allegedly stated to Camblos that Smith had "broken her son's neck" during a high school wrestling match.

The final act from which the charge of defamation arises occurred on December 10, 1997, when Arnold Goldin, Rossini's agent, delivered an arbitration opinion to Camblos which described the events surrounding the wrestling injury. It is alleged that Goldin redacted certain portions of the statement in order to substantiate Rossini's statements and provide a false impression of the events.

### Discussion of Authority

In considering a demurrer, it is a "settled rule that a demurrer admits the truth of all well-pleaded material facts. All reasonable factual inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading." *Russo v. White*, 241 Va. 23, 400 S.E.2d 160, 161 (1991) (quoting *Fox v. Custis*, 236 Va. 69, 372 S.E.2d 373, 374 (1988)).

In Virginia, defendants may be immune to liability for defamatory statements if they are protected by a privilege. The application of the doctrine of absolute judicial privilege is a bar to liability for defamation. *Donohoe Const. Co. v. Mount Vernon Assocs.*, 235 Va. 531, 369 S.E.2d 857 (1988). If a court finds a qualified privilege, it must determine whether or not the Plaintiff has raised enough of a probability of abuse for the question to be one for the jury. The question then falls on the jury to determine whether or not the Defendant exceeded his privilege. *Alexandria Gazette Corp. v. West*, 198 Va. 154, 160, 93 S.E.2d 274, 279 (1956).

It is also well established that, "It is for the court to rule whether or not an occasion is a privileged one, and if it be one of privilege, whether a qualified or absolute privilege." *Aylor v. Gibbs*, 143 Va. 644 at 648 (1925).

The rule in Virginia is laid out by the case of *Penick v. Ratcliffe*, 149 Va. 618, 140 S.E. 664 (1927), which held that testimony given during a judicial proceeding is absolutely privileged. However, policy considerations do not limit the judicial proceeding privilege to the actual participants. *Watt v. McKelvie*, 219 Va. 645, 248 S.E.2d 826.

Furthermore, the term proceeding is a highly inclusive one, which does not limit itself to the trials themselves. "Although courts may differ in determining when a proceeding is 'judicial,' the rule of absolute privilege accorded judicial proceedings is not limited to trials … . The rule is broad and comprehensive, including within its scope all proceedings of a judicial nature whether pending in some court of justice, or before a tribunal or officer clothed with judicial or quasi-judicial powers." *Penick*, 149 Va. 618, 627-28, 140 S.E. 664, 667.

The concern thus turns to what the phrase "judicial nature" means. Quasi-judicial, as defined by *Black's Law Dictionary* 1245 (6th ed. 1990), is a "term applied to action, discretion, etc., of public administrative officers or bodies, who are required to investigate facts, or ascertain the existence of facts, hold hearings, weigh evidence, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature."

Courts have recognized that a prosecuting attorney has quasi-judicial duties. The case of *Ganger v. Peyton*, 379 F.2d 709 at 713 (4th Cir. 1967), addressed the issue in stating, "At common law, a prosecuting attorney is the representative of the public in whom is lodged a discretion which is not to be controlled by the courts or by an interested individual." The *Ganger* court relied heavily on the decision of *United States v. Brokaw*, 60 F. Supp. 100 at 101 (S.D. Ill. 1945), which held that, "The control of criminal litigation during many stages of a prosecution is a prerogative and power closely akin to the power of initiating a prosecution." Furthermore, the court clarified the duties in question, saying that, "at different stages of a prosecution he [the prosecuting attorney] exercises that control administratively and may not be required to submit his authority in this respect to the control of a judicial discretion or to the desires of interested individuals or groups of individuals." *Id.*

This control and functioning outside the scope of purely judicial duties creates quasi-judicial responsibilities explicitly recognized in later cases. *Wellman v. State of West Virginia*, 637 F. Supp. 135 at 137 (S.D. W. Va. 1986), stated that "Prosecutors are absolutely immune for the[ir] quasi-judicial functions. The functions protected include those involved with initiating and pursuing a criminal prosecution." Standing alone, this does not grant immunity to Rossini as she is not a prosecuting attorney. However, this case makes it clear that a conversation involved in the initiation of a criminal prosecution is a quasi-judicial proceeding or function. This position is buttressed by *Imbler v. Pachtman*, 424 U.S. 409 at 431, n. 33 (1975), which looked again to the nature of the functions in question:

> Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence. At some point, and with respect to some decisions, the prosecutor no doubt functions as an administrator rather than as an officer of the court.

Applying the facts of the present case to the *Black's* definition of the phrase "quasi-judicial," the conversation in question was an action that

Camblos engaged in as a Commonwealth's Attorney who is required to investigate facts, ascertain the existence of facts, weigh evidence, and draw conclusions from that evidence. There is thus an inherent safeguard as in a judicial hearing in that his duties require him to exercise, as mentioned, discretion of a judicial nature and weigh what he is told. He did not have to believe what Rossini was telling him, and he had discretion to investigate as he felt was appropriate. Most importantly, however, it is clear that his function created a quasi-judicial proceeding which shrouded the actions involved with his investigation with an absolute privilege.

The only other requirement which must be satisfied is laid out in *Massey v. Jones*, 182 Va. 200, 208, 28 S.E.2d 623, 627 (1944). "Whether the action for the recovery of damages be brought upon the charge of slander or upon the charge of libel, the test to be applied upon a plea of privilege is the relevancy and pertinency of the alleged offending language to the matter in inquiry." The court clarifies the requirement in saying, "As to the degree of relevancy or pertinency necessary to bring the alleged defamatory matter within the privilege, the courts favor a liberal rule. Thus, the matter to which the privilege does not extend must be so palpably wanting in relation to the subject matter of the controversy that no reasonable man can doubt its irrelevancy and impropriety." *Id.* Thus, if Rossini's statements were related to the matter that Camblos was concerned with, they meet the liberal standard of fit. Her statements were related to Camblos' investigation. If nothing else, the statements concerned themselves with the character of Smith, something relevant to Camblos' case. Therefore, the *Massey* requirement has been met.

The Plaintiff counters by trying to create a distinction between volunteering information and responding to inquiry using the case of *Mangold v. Analytic Services, Inc.*, 77 F.3d 1442. However, the main thrust of *Mangold* involves whether the law provides absolute immunity to people who make defamatory statements within the scope of their special status. Rossini's status is not in question in this case, and it is certain she had no special status which would protect her.

The federal court makes a point of stating that the issues it is addressing are concerns within the law of governmental immunity. *Mangold*, 77 F.3d 1442 at 1446. The problem of whether or not a defendant's status gives rise to absolute immunity during governmental investigations is a very different concern from the one brought before this court. The case at bar involves a judicial proceeding. This difference between a governmental investigation and a judicial proceeding is key as it is the nature of the investigation that does or does not give rise to the distinction mentioned by the Plaintiff.

*Black's Law Dictionary* 849 (6th ed. 1990) states that a judicial proceeding is "Any proceeding wherein judicial action is invoked and taken." Judicial action is "An adjudication upon rights of parties who in general appear or are brought before tribunal by notice or process, and upon whose claims some decision or judgment is rendered." *Black's* 847 (6th ed. 1990). Governmental action is entirely different and is defined as, "Any action of the federal government within its constitutional power." *Black's* 825 (4th ed. 1968). In a judicial proceeding, the safeguards of a trial and equality under the law insure that both parties get notice and the opportunity to be heard. These protections are always in place. While governmental investigations seek a just result and parties are protected by constitutional limitations on governmental power, the safeguards of the judicial system are not required to be in place. This causes the laws of privilege to be different for governmental and judicial proceedings.

In *Mangold*, the investigation in question was conducted by the Air Force Office of Special Investigations and the Inspector General. Governmental investigations of that sort do not by their natural course arise nor arrive in courts of law. Governmental immunity serves to keep certain participants out of the court system by barring private action, but that is its only connection to the courts. Judicial and quasi-judicial proceedings naturally must concern courts of law. If events run their course, these proceedings do end up in the courts. In a judicial context, the allegedly defamed party will, at some point, have a chance to respond and prove or disprove the veracity of the statements. In the context of a governmental investigation, the party allegedly defamed usually gets a chance to defend himself, but there are not the same safeguard requirements present in all judicial systems.

The distinction between governmental and judicial proceedings was further emphasized in *Gulati v. Zuckerman*, 723 F. Supp. 353 (E.D. Pa. 1989), where the concern was whether or not the Defendants in that case stepped outside of their official governmental duties. The statement in question in *Gulati* was made during a governmental security investigation by the Department of Defense. The statement was made by the president of Viatek, a defense contractor with facility security clearance which qualifies it for access to certain classified information. The problem with the contractor's statement was that federal immunity only extends to conduct which falls within the scope of employment. *Gulati*, 723 F. Supp. 353 at 356. The contractor went too far past the limit. The only times in which the Plaintiff's distinction comes into play are governmental investigations where contractors employed by the government step beyond the scope of their official duties. This is obviously a far cry from the events in the case at bar.

In *Gulati*, the court's finding of no absolute immunity was based not only on the volunteering of information by a governmental official outside the scope of his duty, but also on the fact that the letter was not connected with a governmental investigation. The court held that they would only find no immunity when protection serves no important governmental purpose. *Gulati*, 723 F. Supp. 353 at 358. Thus, even if governmental investigations were found to be similar to judicial proceedings, Rossini is protected by the fact that her statements were connected to Camblos' investigation under the liberal standard of *Massey*. Additionally, as to a viable governmental purpose, as pointed out in *Mangold*, "immunity also has been held to extend to witnesses giving testimony to public prosecutors." *Mangold*, 77 F.3d 1442 at 1448. "In the absence of a privilege to such witnesses, the exposure to tort lawsuits would chill government-sponsored investigatory and adjudicatory efforts, threatening to undermine their reliability and therefore erode confidence in the judicial function of government." *Mangold*, 77 F.3d 1442 at 1449. Thus, in order not to hamper future investigations and to insure their reliability and the public confidence in them, Rossini must be protected.

The Plaintiff is correct in its analysis that §§ 586 and 587 of the Restatement (Second) of Torts (1997) do not apply in this case. The Restatement sections only protect a party to a private litigation or a private prosecutor or defendant in a criminal prosecution. The criminal prosecution in question is Camblos' against Smith. Rossini is not a party to the litigation, the prosecutor, or the defendant. She is a third party who enters into the process during a quasi-judicial proceeding. The Restatement is explicit that it only protects certain classes of people, and Rossini does not fall into any of these classes. However, even though the Restatement does not mention the class that she falls into, this does not mean that she is barred from absolute immunity. It simply means that she must use Virginia case law to support her claim rather than the Restatement.

As a result, the analytical framework of *Long v. Old Point Bank*, 41 Va. Cir. 409 (1997), which the Defendant uses to support her argument does not apply as the Defendant would have it apply. As the two-step test is created by the Restatement, it cannot simply be plugged in, as the Restatement concerns itself with specific classes of people. Rossini is not a member of any of these classes. The two-part test of *Long* states that:

> In determining whether the privilege applies in the case at bar, a two-step analysis must be followed: "First, the occasion of the communication must be examined to determine if the statement was made 'preliminary to a proposed judicial proceeding, or in the

institution of, or during the course and as a part of a judicial proceeding.' Second, a court must evaluate the content of the statement to determine if it 'has some relation to a proceeding that is contemplated in good faith and under serious consideration'."

*Long*, 41 Va. Cir. 409 at 414, citing *General Elec. Co. v. Sargent*, 916 F.2d 1119 at 1127 (6th Cir. 1990).

The analysis of *Long* comes close to falling into the framework of Virginia case law, however. The *Penick* doctrine extends absolute immunity to quasi-judicial proceedings, which the first prong of *Long* addresses in mentioning two circumstances falling into this category. The *Massey* doctrine provides for the "relation to a proceeding" prong of *Long* but states no "good faith" or "serious consideration" requirement. As stated in *Imbler*, part of a prosecuting attorney's quasi-judicial duties include the reviewing and evaluating of evidence. *Imbler*, 424 U.S. 409 at 431, n. 33. By *Massey* not mentioning these two *Long* and Restatement requirements, Virginia leaves it to the discretion of the prosecutor to determine the veracity of witnesses and informants. Thus, Virginia case law continues to favor absolute immunity in quasi-judicial proceedings where the issue concerned has some relation to the proceeding.

Thus, under *Penick* and *Massey*, the communications in question were not made in the context of being peripheral statements but statements made during a quasi-judicial proceeding. They meet the liberal standard of relation to the matter of inquiry, and as such, it is not important whether Rossini contacted Camblos or Camblos contacted Rossini. Under Virginia law, the statements are protected by absolute judicial privilege.

Based upon the above analysis, the Demurrer is sustained on the ground of absolute privilege.