## CIRCUIT COURT OF FAIRFAX COUNTY

Bridge Technology Corp.

v.

The Kenjya Group, Inc., et al.

April 20, 2004

Case No. (Chancery) 186469

BY JUDGE R. TERRENCE NEY

This matter came before the Court on March 12, 2004, on Complainant Bridge Technology Corporation's (" Bridge Tech" ) Second Demurrer filed in response to Respondents Lawrence Medler, Mark Johnson, and The Kenjya Group, Inc.'s (" TKG" ) Amended Cross-Bill.

### *Facts*

The underlying action arises out of the Respondents Medler and Johnson's alleged breach of their employment contracts with Bridge Tech, their former employer. Respondents Johnson and Medler are former employees of Bridge Tech and are presently employed by TKG, a competitor of Bridge Tech. Both Johnson and Medler executed nondisclosure and conflict of interest employment agreements while employed by Bridge Tech.

On October 10, 2003, Bridge Tech filed a twenty-count Motion for Judgment against The Titan Corporation,[1] Medler, Johnson, and The Kenjya

---

[1] The Titan Corporation, a defense and technology company, provides information technology products and service to the federal government. Bridge Tech alleges that it contracted to perform subcontract work for Titan in early 2003. Compl. & 21. Bridge Tech further alleges that as a result of Medler and Johnson's interference with Bridge Tech's business relationship with Titan, Titan subsequently issued its 2004 Prime Contract to TKG instead of Bridge Tech. Compl. & 28.

Group, Medler and Johnson's current employer, raising claims of conspiracy to injure a business; misappropriation of trade secrets; breach of contract; breach of fiduciary duty; fraud; tortious interference with contract and business expectancy; violation of the Virginia Crimes Act; and breach of covenant of good faith and fair dealing.

On November 3, 2003, Respondents TKG, Medler, and Johnson filed their Answer, Grounds of Defense, and Cross-Bill against Bridge Tech, alleging Tortious Interference with a Contract Expectancy and Defamation for Bridge Tech's purported improper and false allegations made to the National Security Agency ("NSA") regarding Johnson's conduct, allegations which resulted in the suspension of Johnson's security clearance. Johnson's security clearance was reinstated in late September 2003 after an internal investigation conducted by the NSA cleared him of all allegations made by Bridge Tech. Cross-Bill & 19. Because of the suspension, the Respondents' reputations and business allegedly suffered. Cross-Bill && 14-15.

In response to the Cross-Bill, Bridge Tech filed a Demurrer on the grounds that the cross-claims do not, as a matter of law, constitute claims for which relief can be granted. Specifically, Bridge Tech asserted that, as a general contractor entrusted with classified information, it has absolute immunity from Respondents' Defamation claim. With respect to Respondents' claim for Tortious Interference with Contract Expectancy, Bridge Tech asserted that federal regulations pre-empt such a claim.

In support of its Demurrer, Bridge Tech specifically referenced § 1-302 of the National Industrial Security Program Operating Manual ("the NISPOM"),[2] which governs the reporting of adverse information by federal government contractors to the NSA with respect to any of their employees with security clearances. See § 1-302 of the NISPOM, *infra*.

In response, the Respondents, also relying on the language of § 1-302 of the NISPOM, argued that Bridge Tech's statements to the NSA were not made pursuant to the requirements of the NISPOM, but rather were based on "rumor and/or innuendo." *Id.* As such, Respondents argued that Bridge Tech's statements were not privileged.

On January 9, 2004, the Court entered an Order sustaining the Complainant's Demurrer to the Respondents' Cross-Bill, noting the absence of any express allegation that Bridge Tech's statements constituted "rumor and/or innuendo" as provided in the NISPOM. The Respondents were granted twenty-one days to file an Amended Cross-Bill of Complaint.

---

[2] Executive Order 12829 established a National Industrial Security Program ("NISP") to safeguard classified information released to contractors on government contracts. Pursuant to this Order, the U.S. Department of Defense issued the NISPOM, which imposes regulations to control the disclosure of classified information.

On January 30, 2004, Respondents filed an Amended Cross-Bill, again alleging Tortious Interference with Contract Expectancy and Defamation, but with additional details surrounding both claims, including the key allegation in the latter claim that Bridge Tech's statements "were false, without foundation, *based merely on rumor and innuendo,* and were not made pursuant to any formal investigation." Amended Cross-Bill & 19. Respondents further allege that the allegations made by Bridge Tech were investigated by the NSA and found to be "wholly without merit." Amended Cross-Bill & 21.

In addition, Respondents allege that Bridge Tech "harmed the reputations of Johnson and TKG" when it conveyed Johnson's alleged improprieties,[3] not only to the NSA, but also to other "members of the defense contracting industry." Amended Cross-Bill && 13-15, 19, and 22-24.

In response, Bridge Tech filed its Second Demurrer, again on the grounds that the alleged defamatory statements made to the NSA are mandated by law and absolutely privileged. Contrarily, Respondents argue that the reporting of suspicious activities based on "rumor or innuendo" is excluded from the current NISPOM reporting requirements and therefore not a privileged communication.

On March 12, 2004, the Court took the matter under advisement, in particular the issue of whether language contained within the current NISPOM regarding reports based on "rumor or innuendo" amounts to a waiver of the absolute privilege, thus creating a cause of action where one did not previously exist.

*Analysis*

A demurrer is a defensive pleading that tests the sufficiency of the allegations contained in the bill of complaint or motion for judgment. Va. Code Ann. § 8.01-273 (Michie 2003). In deciding a demurrer, the Court must consider as true the facts expressly alleged, the facts impliedly alleged, and the facts that may be fairly and justly inferred from the alleged facts. *CaterCorp, Inc. v. Catering Concepts, Inc.,* 246 Va. 22, 24, 431 S.E.2d 277 (1993). A demurrer, however, does not admit the correctness of the conclusions of law found in the challenged pleading. *Ward's Equipment, Inc. v. New Holland N. America, Inc.,* 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997) (quoting *Fox v. Custis,* 236 Va. 69, 71, 372 S.E.2d 373, 374 (1988)).

In support of its Second Demurrer, Bridge Tech makes two arguments. First, it asserts that as a government contractor doing business with the United States Department of Defense ("DOD") and handling classified information,

---

[3] Amended Cross-Bill & 11.

it is required by law to report "adverse information coming to [its] attention concerning any of [its] cleared employees."[4] Second, Bridge Tech argues that, as a government contractor, it enjoys immunity as to the filing of such reports pursuant to § 1-302 of the NISPOM.

In support of these propositions, Bridge Tech relies primarily on the United States Court of Appeals for the Fourth Circuit decision in *Becker v. Philco Corp.*, 372 F.2d 771 (4th Cir. 1967). In addressing facts strikingly similar to those presented here, the Court in *Becker* held that allegedly defamatory statements made by a government contractor in a security report submitted to the DOD were privileged and that the contractor was entitled to official immunity. *Id.* at 775. In upholding immunity, the Court acknowledged the contractor's "governmentally imposed duty" pursuant to its contractual obligations under its government contract to report breaches of security.[5]

Respondents attempt to distinguish *Becker* from this case on the grounds that the Court's decision in *Becker* was based on the predecessor to § 1-302 of the NISPOM, namely the DOD Industrial Security Manual for Safeguarding Classified Information, DOD 5520.22-M (" Industrial Security Manual" ),[6] which did not include the qualifier now contained in § 1-302 of the NISPOM that "reports based on rumor or innuendo should not be made." Section 1-302 of the NISPOM.

_____

[4] Section 1-302 of the NISPOM provides, in relevant part, that "contractors shall report any adverse information coming to their attention concerning any of their cleared employees. Reports based on rumor or innuendo should not be made." Section 1-302 further notes, citing to *Becker v. Philco*, 372 F.2d 771 (4th Cir. 1967), "that a contractor is not liable for defamation of an employee because of reports made to the Government pursuant to the requirements of this Manual."

[5] *Id.* at 773-76. In its contract with the federal government, Philco agreed to "provide and maintain a system of security within its or his own organization in accordance with the requirements of the Department of Defense Industrial Security Manual for Safeguarding Classified Information." The Court also noted that "the same considerations which underlie the recognition of the privilege as to acts done in connection with a mandatory duty apply with equal force to *discretionary* acts." *Id.* at 775 (emphasis added) (quoting *Barr v. Matteo*, 360 U.S. 564, 575, 3 L. Ed. 2d 1434, 79 S. Ct. 1335 (1945)). *See also, Gulati v. Zuckerman*, 723 F. Supp. 353 (E.D. Pa. 1989) (finding that contractors to the United States have a duty under the Industrial Security Manual to report adverse information reflecting on the integrity of coworkers, court reasoned that private contractors should be able to report damaging information to the federal government without "fear of expensive litigation" ), *citing Becker v. Philco*, 372 F.2d 771 (4th Cir. 1967).

[6] *Becker* at 772-73. Prior to the NISPOM regulations, released in January 1995, the Industrial Security Manual provided that "Contractors shall submit reports, classified if appropriate, of any information coming to their attention concerning any of their employees who have been cleared or who are in the process of being cleared for access to classified information."

Given this "new" language with respect to "rumor or innuendo," Respondents argue that the addition of such language to the NISPOM reporting requirements evinces an intent by DOD to carve out a legal exception to the general rule articulated in *Becker* with respect to absolute immunity and to apply a *qualified* privilege to those statements based on "rumor or innuendo."

In determining whether the inclusion of the "rumor or innuendo" instruction in the NISPOM demonstrates the DOD's intent to limit the scope of absolute immunity, the Court looks to the language of both the NISPOM and its predecessor, the Industrial Security Manual. Where the language is clear and unambiguous, the Court is to construe such language according to its plain meaning without resort to rules of statutory interpretation. *See Holsapple v. Commonwealth*, 266 Va. 593, 598, 587 S.E.2d 561, 564 (2003); *Brown v. Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985) (when the language of an enactment is free from ambiguity, resort to legislative history and extrinsic facts is not permitted because we take the words as written to determine their meaning); *see also Industrial Dev. Auth. v. Board of Supervisors*, 263 Va. 349, 353, 559 S.E.2d 621, 623 (2002). Any change in the regulation, however, is assumed to be "purposeful and not unnecessary or vain." *See Cape Henry Towers, Inc. v. National Gypsum Co.*, 229 Va. 596, 600, 331 S.E.2d 476, 479 (1985); accord *Virginia-American Water Co. v. Prince William County Serv. Auth.*, 246 Va. 509, 517, 436 S.E.2d 618, 623 (1993) (a presumption exists that a substantive change in law was intended by an amendment to an existing statute.)

A review of the DOD regulations, however, set forth in both § 1-302 of the NISPOM and in the Industrial Security Manual reveals that the "rumor and innuendo" instruction is neither a change in the regulation[7] nor new language, but was also contained in the Industrial Security Manual,[8] the regulation in effect when *Becker* was decided.

---

[7] The reporting requirements under both the NISPOM and its predecessor Industrial Security Manual are virtually identical. The "rumor or innuendo" instruction contained within the body of § 1-302 of the NISPOM is also found in the Industrial Security Manual, albeit in a footnote. While the Respondents could argue that moving such language from a footnote to the body of the regulation constitutes a "change" in the substance of the regulation, the Court finds such a change to be one of form only, and, as such, does not signify a shift in DOD's intent to clothe a government contractor's adverse reports in absolute immunity.

[8] Section I, & 6(b)(1), of the Industrial Security Manual, DOD 5520.22-M, 1987 and 1989, which concerns a contractor's reporting requirement of adverse information with respect to employees holding a security clearance, contains a footnote which provides, in relevant part: "Only information which has been confirmed by the contractor as fact need be reported. Reports based on rumor and innuendo should not be made under this paragraph." See Section I, & 6(b)(1), n. 13, of the Industrial Security Manual, DOD 5520.22-M.

Moreover, notwithstanding the "rumor or innuendo" instruction contained within the Industrial Security Manual, the *Becker* Court nonetheless recognized a contractor's lack of discretion in reporting actual as opposed to merely "suspected" adverse conduct,[9] and that "the obligation [to report adverse information] embraces both true and false accusations, both substantial and insubstantial suggestions, *perhaps even encompassing rumors." Becker*, 372 F.2d at 774 (emphasis added).

In short, the Court finds the "rumor and innuendo" instruction to be merely advisory and not an invitation to sue. If DOD intended for § 1-302 of the NISPOM to abrogate the absolute privilege afforded to government contractors, it would have plainly done so.

Furthermore, the express language of § 1-302 of the NISPOM continues to make specific reference to the *Becker* decision, as did its predecessor, thus attesting to *Becker*'s continuing application and relevance and affirming that "a contractor is not liable for defamation of an employee because of reports made to the Government pursuant to the requirements" of the NISPOM. Section 1-302 of the NISPOM.

Lastly, the Restatement sets out that "one who is required by law to publish defamatory matter is absolutely privileged to publish it." See The Restatement (Second) of the Law of Torts, § 592A, and *Restatement*, § 592A, cmt. b. (The § 592A rule "will apply whenever the one who publishes the matter acts under legal compulsion in doing so." ) Several recent decisions, both from the Fourth Circuit and from other jurisdictions, have so held. *See e.g., Slotten v. Hoffman*, 999 F.2d 333 (8th Cir. 1993) (official immunity barred suit when defendant was contractually obligated to report suspected banking law violations); *see also Mangold v. Analytic Svcs., Inc.*, 77 F.3d 1442 (4th Cir. 1996) (extending absolute privilege to defendant's voluntary statements to the federal government concerning alleged illegal behavior of an Army colonel); *Shabazz v. PYA Monarch*, 271 F. Supp. 2d 797 (E.D. Va. 2003) (statements voluntarily made to the FBI in response to an FBI inquiry are privileged; employer had absolute immunity).

## Conclusion

In sum, Bridge Tech cannot be held answerable for the alleged falsity and defamation contained in its report to the NSA made pursuant to federal regulations. Courts have long recognized the importance of allowing government officials, including government contractors, to freely exercise

---

[9] *See also Gulati v. Zuckerman*, 723 F. Supp. 353, 358 (E.D. Pa. 1989), *citing Becker v. Philco*, 372 F.2d 771 (1967) (" Self-censorship in adverse information reporting would be extremely detrimental to the federal goal of ferreting out security risks in the defense industry." ).

their duties "unembarrassed by the fear of damage suits." *Becker*, 372 F.2d at 774, *citing Barr v. Matteo*, 360 U.S. 564, 3 L. Ed. 2d 1434, 79 S. Ct. 1335 (1959). With respect to any maliciously false libel uttered in an internal report, it is the function of the internal investigatory process to uncover such statements and discredit them without further dissemination. *See Gulati v. Zuckerman*, 723 F. Supp. 353, 358 (E.D. Pa. 1989) (" It is the province of federal security investigators, not of reporting contractors, to sort out valid reports of employee misbehavior from unfounded fictions." ); *see also Barr v. Matteo*, 360 U.S. 564, 3 L. Ed. 2d 1434, 79 S. Ct. 1335 (1959) (Warren, C.J., dissenting).

In addition, to the extent that Respondents' claim for Tortious Interference with Contract Expectancy relies on the privileged defamatory statements made by Bridge Tech to the NSA pursuant to its duty to report under the NISPOM, Bridge Tech cannot be held liable as a matter of law. As the underlying actions are compelled by law, all underlying consequences are afforded protection.

Finally, with regard to Respondents' allegation that Bridge Tech maliciously made false statements to other members of the defense contracting industry,[10] such statements were allegedly made to persons outside the internal operations of the government and not pursuant to any mandatory reporting requirements. As a result, such statements are not entitled to the same immunity.

For these reasons, Bridge Tech's Second Demurrer to Respondents' Amended Cross-Bill is sustained with regard to those statements made to the NSA in furtherance of Bridge Tech's duty to report adverse information to the federal government. As for those statements allegedly made to "other members in the defense contracting community," the Demurrer is overruled.

## Order

This matter came before the Court on March 12, 2004, pursuant to Complainant Bridge Technology Corporation's Second Demurrer to Respondents Lawrence Medler, Mark Johnson, and The Kenjya Group, Inc.'s Amended Cross-Bill alleging Tortious Interference with Contract Expectancy and Defamation. For the reasons stated in this Court's opinion letter dated April 20, 2004, which is attached hereto and made a part hereof, it is hereby ordered that the Complainant's Second Demurrer is sustained with respect to the statements the Complainant made to the National Security Agency

---

[10] Amended Cross-Bill, && 13-15, 19, and 22-24.

pursuant to its duty to report adverse information to the federal government; and it is further ordered that with respect to statements the Complainant made to "other members in the defense contracting community," the Demurrer is overruled. The Court notes the Respondents' exceptions to this Order.